**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 7 |
| Michael P. Picard, | : | |
| | : | Case No. 16-15432-AMC |
|           Debtor | : | |
| ──────────────────────────── | : | |
| | : | |
| Sabrina Lombardi, | : | |
|           Plaintiff | : | |
| | : | Adv. No. 16-00359-AMC |
|     v. | : | |
| | : | |
| Michael P. Picard, | : | |
| | : | |
|          Defendant | : | |
| ──────────────────────────── | : | |

**OPINION**

Ashely M. Chan, United States Bankruptcy Judge

**I.     INTRODUCTION**

In December 2011, the Montgomery County Court of Common Pleas entered a pre-petition civil judgment against the debtor, Michael P. Picard ("Debtor"), in favor of Sabrina Lombardi ("Ms. Lombardi"), in the amount of $250,000.00, for Ms. Lombardi's claim for pain and suffering she sustained from being attacked by the Debtor on September 10, 1998 ("Civil Judgment"). Through this adversary proceeding, Ms. Lombardi now seeks a determination that the Civil Judgment is nondischargeable under 11 U.S.C. § 523(a)(6)[1]. Compl. to Deny Disch. of Indebt. Purs. to 11 USC 523(a)(6) ("Compl."), No. 16-15432, Adv. No. 16-00359 ("Adv."), ECF No. ("ECF") 1. As discussed below, because Debtor was experiencing a psychotic episode at the

---

[1] Unless otherwise specified, all references to "Section" or "Code" refer to provisions of the Bankruptcy Code, under Title 11 of the United States Code.

time of the attack, he lacked the requisite intent required under § 523(a)(6) and, therefore, the Civil Judgment does not qualify as a debt for willful and malicious injury.

## II. FACTS AND PROCEDURAL HISTORY

On September 10, 1998, the Debtor, a sophomore attending West Chester University at the time, brutally attacked fellow West Chester University sophomore, Ms. Lombardi, and her roommate, Kelly (McDonald) Grego ("Ms. Grego"), in their off-campus residence located at 121 Linden Street, West Chester, Pennsylvania, resulting in Ms. Lombardi sustaining grave injuries, including, *inter alia,* a concussion, a fractured jaw, the loss of several teeth, an injury to her left leg, multiple facial lacerations requiring stitches, and permanent physical and psychological scarring ("Attack"). Trial Tr., ECF 118 at 19:9-20, 20:1-16, 21:3-13, 35:18-25, 36:6-24, 37:3-8, 38:5-15, 39:16-20.

On the night of the Attack, around approximately 9:30 or 10:00 p.m., when Ms. Lombardi arrived home for the evening after attending a gathering at her neighbor's house, the Debtor, who at the time was a friend of Ms. Lombardi and her roommates, was there hanging out with some of her roommates. *Id.* at 19:21-20:16, 21:17-22:5, 35:13-17. The Debtor began asking if anyone had a Bible because he wanted to "find out who the devil was." *Id.* at 22:8-10, 24:16-22. One of Ms. Lombardi's roommates, Julie Tuckerman ("Ms. Tuckerman"), offered to let him read her copy of the Torah, and Ms. Lombardi, Ms. Tuckerman, and Debtor subsequently went upstairs together to Ms. Tuckerman's bedroom to retrieve the book. *Id.* at 22:19-23:18, 26:9-14. While upstairs, the Debtor commented "[w]hen I find out who the devil is they're going out this window and on the pavement." *Id.* at 27:6-8. Considering the Debtor's strange behavior, Ms. Lombardi assumed he was under the influence of drugs or alcohol. *Id.* at 23:19-21, 27:12-17.

After about a half hour had passed from when the Debtor and Ms. Lombardi went upstairs, another one of Ms. Lombardi's roommates came to the door of Ms. Tuckerman's bedroom, and Debtor said "[d]on't touch her, don't go near her," and suddenly, put his hand around Ms. Lombardi's throat, started to strangle her, and swung at and hit Ms. Lombardi in the face with a closed fist hard enough to knock her down against the wall, rendering her unconscious. *Id.* at 28:7-29:1, 30:19-32:15. Subsequently, Ms. Lombardi's roommate, Ms. Grego, ran upstairs and saw the Debtor "punching [Ms. Lombardi] in the face where she was knocked unconscious" and "blood everywhere." *Id.* at 43:21-23. Ms. Grego thought Ms. Lombardi was dead because she was not moving. *Id.* at 44:5-6. When Ms. Grego started screaming for the Debtor to stop, Debtor turned to Ms. Grego, told her that he was going to kill her and Ms. Lombardi, and began attacking Ms. Grego by pulling her by her hair into Ms. Tuckerman's bedroom, kicking her in the face, and hitting her over the head with a lamp, causing Ms. Grego to black out. *Id.* at 45:16-46:6.

After the Attack, on the same night, Ms. Lombardi was taken to the hospital at the Brandywine Trauma Unit where she began receiving treatment for her significant injuries,[2] and the police apprehended the Debtor and transported him to the Chester County Hospital Emergency Department where he arrived restrained and highly combative, and was admitted around approximately 11:38 p.m. *Id.* at 35:3-36:3, 61:6-63:3, 71:12-72:12, 88:7-13. *See also* Ex. D-18 at 20:18-21:24. The treating physician and Co-Chairman of the Chester County Hospital Department of Emergency Medicine at the time, Dr. Beverly Mikuriya ("Dr. Mikuriya"), recalled that the Debtor's arrival at the hospital made a considerable commotion and that it took seven people to transfer the Debtor from the ambulance stretcher to the hospital stretcher. Trial

---

[2] Ms. Lombardi's injuries required additional treatment for many years after the Attack. Trial Tr., ECF 118 at 38:3-15. In fact, some of her treatment is still ongoing. *Id.* at 38:15, 39:19-20.

Tr., ECF 118 at 63:2-3, 72:11-15. *See also* Ex. D-18 at 21:20-24; Ex. D-10, Curriculum Vitae of Beverly Mikuriya at 2. While receiving treatment, the Debtor was yelling profanities, threatening to kill the hospital staff, and accusing those offering treatment of conspiring to kill him and of being possessed by Satan. Trial Tr., ECF 118 at 75:3-25. *See also* Ex. D-18 at 22:4-12. Dr. Mikuriya concluded based on the results of the Debtor's drug screen that "this was an acute psychiatric emergency, not secondary to drugs" and that there was only a very negligible amount of alcohol in his system. Trial Tr., ECF 118 at 82:2-83:3. He was ultimately diagnosed by Dr. Mikuriya as experiencing an acute psychosis, defined as "acute detachment from the reality…frequently manifest…by religious ideation and paranoia." *Id.* at 84:16-85:2. In the early morning hours of September 11, 1998, Dr. Mikuriya arranged for the Debtor to be committed to a psychiatric facility, explaining in the application for involuntary commitment:

> 18[-year-old] brought to [Emergency Department] by police after beating one girl unconscious and striking and kicking another girl…When asked why he beat the first girl he told staff she had the devil in her and that he felt that he had to beat it out of her. The [patient] was in restraints and when I refused to remove them, he told me he would break my neck and rip my heart out when he got out. When asked who told him to do these acts the [patient] stated that God was telling him to do them.

Ex. D-12 at 3; Trial Tr., ECF 118 at 85:4-86:1, 88:7-25, 90:22-91:25.

The Debtor would later be diagnosed with bipolar disorder. Trial Tr. at 95:23-96:1. *See also* Ex. D-18 at 4:17-7:16.

Subsequent to the Attack, the Debtor pled guilty to two counts of aggravated assault[3] in connection with the Attack ("Guilty Plea"). *See* Ex. D-18 at 61:12-13. By way of background, in the ensuing criminal case, on February 16, 2000, the sentencing hearing was held where testimony was offered by, *inter alia*, Ms. Lombardi, Ms. Grego, Dr. Mikuriya, the Debtor, and

---

[3] 18 Pa. Cons. Stat. § 2702(a)(1).

Dr. James Schaller, Debtor's psychiatrist at the time of sentencing. *See* Ex. D-18. After hearing the testimony, the sentencing judge acknowledged the opinion of the Commonwealth's own expert, whose report indicated that the Debtor "was unable to conform his conduct to the requirements of the law as a result of the perceived need to protect himself arising out of his psychosis at that time[,]" and commented that despite what he considered to be "a valid legal defense to [the] charges," the Debtor "nonetheless pled guilty, sparing, . . . the young ladies from having to go through a trial." Ex. D-18 at 64:24-65:14. The Debtor was then sentenced to two consecutive twenty-year terms of probation, and ordered to pay the costs of his prosecution, as well as "any out-of-pocket medical expenses," or "follow-up treatment or evaluation[s]" that Ms. Lombardi may incur as a result of her injuries. *Id.* at 68:18-70:20. Thereafter, on December 27, 2011, Ms. Lombardi obtained the Civil Judgment for the pain and suffering she sustained from the Attack. Trial Ex. P-1, J. Entd. Against [Debtor], *Lombardi v. Picard*, Case No. 2001-14287 (Ct. Comm. Pl. Dec. 27, 2011) ("Trial Ex. P-1").

On July 31, 2016, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Vol. Ch. 7 Pet., No. 16-15432, ECF No. 1. On October 12, 2016, Ms. Lombardi initiated the above captioned adversary proceeding seeking a determination under 11 U.S.C. § 523(a)(6) that the Civil Judgment is nondischargeable as a debt arising from a willful and malicious injury ("Adversary Proceeding"). Compl. Adv. ECF 1.

On June 13, 2017, upon request of the parties to participate in the court-annexed mediation program, the Court entered an order assigning the Adversary Proceeding to mediation. Adv. ECF 9, 11. After approximately two months of settlement discussions, mediation concluded unsuccessfully. Adv. ECF 13. Nevertheless, over the course of the next few years, the parties

engaged in multiple status conferences, and continued to explore the possibility of settlement. *See generally Lombardi v. Picard*, Adv. No. 16-359.

Meanwhile, on March 4, 2018, Ms. Lombardi filed a motion for summary judgment ("Summary Judgment Motion") in which she averred that, based upon the Guilty Plea and affidavit of probable cause in the criminal case, the doctrine of issue preclusion prevented the Debtor from presenting defenses to his conduct during the Attack. Adv. ECF 27 at ¶ 12; Mem. Law Supp. Pl's. Mot. Sum. J., Adv. ECF 27-3 at 4-8. The Debtor responded by arguing, *inter alia*, that issue preclusion was inapplicable because reckless conduct satisfies the elements necessary for an aggravated assault conviction in Pennsylvania pursuant to 18 Pa. Cons. Stat. § 2702(a)(1), and thus the Guilty Plea alone, which did not indicate whether the plea was based upon reckless or intentional conduct, could not as a matter of law establish that the Civil Judgment based on the same conduct as the Guilty Plea is a debt for "willful and malicious injury" pursuant to § 523(a)(6). Mem. in Opp. to Pl.'s Mot. Sum. J., Adv. ECF 39 at 9, 14-15. Thereafter, on May 21, 2018, at the commencement of the hearing on the Summary Judgment Motion, Ms. Lombardi immediately withdrew her Summary Judgment Motion. *See* Adv. ECF 46.

On June 22, 2021, the Court entered the ninth, and final, amended pretrial order ("Ninth Pretrial Order"), the terms of which were proposed by the parties, and which set a deadline of July 19, 2021, for the parties to file a joint-pretrial statement, while leaving the date for trial open. Adv. ECF 89, 90 ¶¶ (1)(C)(iii), (4). The Ninth Pretrial Order obligated plaintiff's counsel "to initiate, assemble and submit the proposed pretrial statement." Adv. ECF 90 at ¶ (1)(C)(iii). The Ninth Pretrial Order also directed plaintiff's counsel to submit to defendant's counsel "a

proposed joint pretrial statement . . . not less than 7 days prior to the deadline for its submission." *Id.*

Thereafter, on August 2, 2021, two-weeks after the deadline to file a joint-pretrial statement, the Debtor filed an expedited motion to dismiss the Adversary Proceeding ("Motion to Dismiss"), based upon Ms. Lombardi's counsel's failure to comply with the deadlines set forth in the Ninth Pretrial Order. Adv. ECF 93. In the Motion to Dismiss, Debtor alleged, *inter alia*, that Ms. Lombardi's counsel "utterly failed to take a single step to prosecute this case…" *Id.* at ¶ 27. Among the many issues identified in the Debtor's Motion to Dismiss, the Debtor alleged that, following the entry of the Ninth Pretrial Order, Ms. Lombardi's counsel failed to fulfill any of his responsibilities outlined therein, including, *inter alia*, submitting a proposed joint-pretrial statement to the Debtor by July 12, 2021; filing a finalized joint-pretrial statement by July 19, 2021; curing certain discovery deficiencies identified by the Debtor[4] on or before July 7, 2021[5]; providing amended pretrial disclosures pursuant to Fed. R. Civ. P. 26(a)(3);[6] communicating with Debtor's counsel about efforts to comply with his duties under the Ninth Pretrial Order; or participating in the case in any manner since the date that the Ninth Pretrial Order was entered. *Id.* at ¶¶ 16, 21, 23, 26, 27.

The failings identified in the Motion to Dismiss were addressed on August 25, 2021, at a pretrial conference, which also served as an initial hearing on the Debtor's Motion to Dismiss ("Pretrial Conference"). At the Pretrial Conference, it became apparent that Ms. Lombardi's counsel did not even attempt to cure the discovery deficiencies identified by the Debtor until

---

[4] According to the Debtor's Motion to Dismiss, on June 28, 2021, Debtor's counsel sent Ms. Lombardi's counsel a detailed list of deficiencies in Ms. Lombardi's discovery responses to the Debtor's discovery requests. Adv. ECF 93 at ¶ 19.
[5] The Ninth Pretrial Order required the parties to "either cure any such deficiencies by providing required discovery or file for a protective order on or before **July 7, 2021**." Adv. ECF 90 at ¶ (1)(A).
[6] The parties had both submitted their respective Rule 26(a)(3) disclosures in the summer of 2020, s*ee* Adv. ECF 66, 74, however, Ms. Lombardi's counsel did not file any updated/amended disclosures.

August 20, 2021, at which time only partial responses to the Debtor's discovery requests were produced, the sufficiency of which was disputed by Debtor's counsel, and only a partial witness list was provided. Audio R. Hrg. Aug. 25, 2021, Adv. ECF 97 at 10:01:12–10:33:48. Despite Ms. Lombardi's counsel's failure to fulfill his responsibilities under the Ninth Pretrial Order, the Court elected to continue the hearing on the Motion to Dismiss at that time and allow the case to proceed to trial. *Id.* However, the Court informed Ms. Lombardi's counsel that, due to his failure to provide Debtor's counsel with a complete witness list, he would be bound by the partial list that he provided, and therefore, only be permitted to call the Debtor and Ms. Lombardi's roommate as witnesses, and their testimony would be limited only to that which could be probative of the Debtor's mental state at the time of the Attack. *Id.*

Thereafter, on September 29, 2021, the parties appeared before the Court to discuss setting a date for trial and the remaining pretrial matters that needed to be addressed ("September 2021 Hearing"). Specifically, the parties addressed that (1) the joint pretrial statement remained due and (2) an order governing the procedures for conducting the trial via Zoom needed to be entered. Audio R. Hrg. Sept. 29, 2021, Adv. ECF 99 at 16:15:52 – 16:19:20. At the September 2021 Hearing, the parties agreed on a trial date of January 6, 2022, and also to work together to prepare the outstanding joint pretrial statement and Zoom order. *Id.* Subsequently, on October 21, 2021, the Court entered an order setting forth the procedures for the trial to be conducted via Zoom ("Zoom Order"). Adv. ECF 101. The Zoom Order required both parties to file, and serve, on or before December 20, 2021, both a "Remote Witness List" and a list of all exhibits to be introduced at trial. Adv. ECF 101 at ¶¶ 1-2. Notably, the Zoom Order made clear that, "**FAILURE TO COMPLY STRICTLY WITH THE REQUIREMENTS OF**

**PARAGRAPHS 1-4 MAY RESULT IN THE EXCLUSION OF EVIDENCE OFFERED DURING THE HEARING.**" *Id.* at ¶ 5.

On December 20, 2021, the Debtor timely filed a motion to extend the time to file his pretrial witness list and exhibits, which the Court granted on December 22, 2021. Adv. ECF 103, 106. However, Ms. Lombardi's counsel failed to produce her witness and exhibit lists on or before December 20, 2021, and did not file a motion to extend the time for doing so. This failure prompted the Debtor to amend his pending Motion to Dismiss ("Amended Motion to Dismiss") to argue that, because Ms. Lombardi's counsel had failed to file both a pretrial witness list and list of exhibits, and failed to file any motion for extension of the deadlines thereof, Ms. Lombardi effectively continued to fail to prosecute her complaint and, upon consideration of the prejudice inflicted upon the Debtor, dismissal was justified at that time. Adv. ECF 104 at ¶ 29, 31.

On January 6, 2022, instead of holding the trial, the Court addressed the Amended Motion to Dismiss and Ms. Lombardi's counsel's failure to comply with the Zoom Order. Adv. ECF 109, 113. Ms. Lombardi's counsel acknowledged responsibility for the failure to timely file the witness and exhibit lists. Audio R. Hrg. Jan. 6, 2022, Adv. ECF 113 at 16:01:28 – 16:37:41.[7] However, upon consideration of the prejudice inflicted upon the Debtor by Ms. Lombardi's counsel's failure to comply with the Zoom Order, and in lieu of a dismissal, the Court made a series of rulings with respect to the admissibility of Ms. Lombardi's proposed exhibits and the scope of the testimony of her witnesses. *Id.* Specifically, the Court ruled that Ms. Lombardi

---

[7] The January 6, 2022 hearing began at or around 10:00 a.m., and lasted approximately thirty-six (36) minutes; but due to the delay in processing Zoom audio recordings, the time- and date-stamp of the actual audio file was erroneously recorded as January 12, 2022, beginning at 16:01:27 p.m. Moreover, on the recording, the parties mistakenly refer to the Court's rulings at the Pretrial Conference as having occurred on September 29, 2021. However, the Pretrial Conference occurred on August 25, 2021. Therefore, all references regarding the hearing held on September 29, 2021, made during the audio recording of the hearing on January 6, 2022, and all references to the same in the order issued on January 7, 2022, in-fact refer to the rulings made during the Pretrial Conference, held on August 25, 2021. *See generally* Adv. ECF 115.

would be permitted to call Ms. Lombardi and Ms. Grego as witnesses to testify regarding the Debtor's state of mind during and after the Attack, and Ms. Lombardi would be permitted to introduce as evidence the criminal docket and the Civil Judgment. *Id.*

Thereafter, a trial was conducted via Zoom on February 24, 2022 ("Zoom Trial"), where Ms. Lombardi and Ms. Grego testified, followed by Dr. Mikuriya, who testified as an expert in diagnosing acute psychiatric conditions in the practice of emergency medicine and emergency treatment.[8] Trial Tr., ECF 118 at 66:21-67:3, 70:15-19. She explained that she had diagnosed Debtor with acute psychosis on the night of the Attack based upon the presentation of "religious ideations…and his paranoia including the devil in a lot of his conversation… his age, late teens, early 20's when the beginning of psychotic or psychiatric psychosis happens" and based upon the results of the drug screen and his history. *See id.* at 76:11-20, 77:22-78:15, 83:11-84:4, 84:16-19. When asked if she had come to any conclusion within a reasonable degree of medical certainty regarding "whether [Debtor] could have taken any intentional action in striking [Ms. Lomardi and Ms. Grego] that night," based on her "interactions, observation, attempts to talk with him, the medication [she] gave and his reactions to it," she responded "I don't think that this was really directed at the women personally. I think that this was his thinking derangement, his cognitive derangement that made him do it, not that he intended to do it. I don't think he had any

---

[8] See Ex. D-10 and Trial Tr., ECF 118 at 56:1-66:19 for Dr. Mikuriya's extensive medical background and experience. In particular, Dr. Mikuriya held certifications in both internal and emergency medicine for approximately twenty years, has been an emergency room physician for approximately thirty years, and over the course of her career, she went from serving as an emergency room physician to becoming the head of the Emergency Department at Chester County Hospital. Trial Tr., ECF 118 at 59:1-12, 59:22-60:3, 60:20-61:1. At the time Dr. Mikuriya encountered the Debtor on September 10, 1998, she had been working in Chester County Hospital's Emergency Department for approximately twenty years and was the co-chairman of the Emergency Department. *Id.* at 61:9-13, 63:2-3. Dr. Mikuriya testified that "psychiatric etiology" is a consideration in the evaluation of nearly every patient who presents in the Emergency Department for purposes of determining a diagnosis. *Id.* at 63:18-64:11. Accordingly, the Court, without hesitation, finds that Dr. Mikuriya's extensive experience as an emergency room physician frequently requiring her to consider psychiatric etiology in diagnosing her patients more than qualifies her as an expert in this matter. *See e.g., Waldorf v. Shuta,* 142 F.3d 601, 625 (3d Cir. 1998) (noting that the basis of an expert witness's specialized knowledge "can be practical experience as well as academic training and credentials.").

control over what he was doing." *Id.* at 94:24-95:10. After the trial, post-trial briefing was completed by the parties on April 22, 2022. Adv. ECF 117, 118, 119, 129, 130.

### III. DISCUSSION

Ms. Lombardi asserts that the Civil Judgment is nondischargeable because it constitutes a debt for a willful and malicious injury within the meaning of Section 523(a)(6). Compl., ECF 1 at 5 ¶ 23. The Debtor claims that he was clearly acting under the inducement of acute psychosis at the time of the Attack, and, under those circumstances, he lacked the requisite capacity to act willfully or maliciously when he attacked Ms. Lombardi. *See* Trial Tr., ECF 118 at 84:18-19, 91:6-7, 93:18-21; Ex. D-12 at 3; Ex. D-18 at 3-5.

For the reasons discussed below, the Court concludes that, because the Debtor was experiencing acute psychosis at the time of the Attack, he was unable to form the requisite intent to act willfully when inflicting Ms. Lombardi's injuries. As such, the Court concludes that the Civil Judgment does not constitute a debt for a willful and malicious injury under § 523(a)(6) and is therefore dischargeable.

#### A.     11 U.S.C. § 523(a)(6).

Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is excepted from discharge. 11 U.S.C. § 523(a)(6). The overriding purpose of the Bankruptcy Code is to provide relief to debtors in the form of a fresh start from the weight of oppressive indebtedness and, as a result, "exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 136 (Bankr. E.D. Pa. 2008) (citing *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995)). Therefore, "the creditor bears the burden of demonstrating nondischargeability

by a preponderance of the evidence." *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)).

Courts in this circuit have generally examined "willfulness" and "malice" as distinct elements. *Webb v. Webb (In re Webb)*, 525 B.R. 226, 232 (Bankr. M.D. Pa. 2015) (citing *CB Research & Dev. Inc. v. Kates (In re Kates)*, 485 B.R. 86, 100 (Bankr. E.D. Pa. 2012)); *Estate of DiSabato v. DiGiovanni (In re DiGiovanni)*, 446 B.R. 709, 716 (Bankr. E.D. Pa. 2011). A willful injury is "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to an injury." *Watkins v. Fleisch (In re Fleisch)*, 543 B.R. 166, 170 (Bankr. M.D. Pa. 2015) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998)). This interpretation eliminates from Section 523(a)(6) "reckless" or "negligent" conduct and adopts principles of tort law to strictly limit the discharge exemptions under Section 523(a)(6) to only those debts which arise from injuries that resulted from a debtor who "intend[ed] 'the *consequences* of an act,' not simply 'the act itself.'"[9] *Geiger,* 523 U.S. at 61-2, 64. "Actions taken for the specific purpose of causing an injury as well as actions that have a substantial certainty of producing injury are 'willful' within the meaning of § 523(a)(6)." *In re Kates,* 485 B.R. at 100. Therefore, "under § 523(a)(6), for there to be a 'willful' injury, 'the Bankruptcy Code requires at least a deliberate action that is substantially certain to produce harm.'" *GMAC Inc. v. Coley (In re Coley)*, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010). Generally, a debtor must

---

[9] Under 18 Pa.C.S.A. § 2702(a)(1), to which Debtor pled guilty, a person is guilty of aggravated assault if he, in pertinent part, "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Pursuant to the plain language of the statute, the crime of aggravated assault can be satisfied by reckless conduct in Pennsylvania. The Court appreciates that by virtue of the Guilty Plea, Debtor has certainly bound himself to the underlying facts surrounding the Attack, which he does not appear to dispute in any event. *See Domitrovich v. Monaca,* No. 2:08cv1094, 2010 WL 3489137, at *5 (W.D. Pa. Sept. 1, 2010) (finding a party is collaterally estopped from denying facts which formed the factual basis for the entry of a guilty plea.). But as a matter of law, the Court cannot conclude that the Civil Judgment is nondischargeable based on the Guilty Plea alone given the Supreme Court's clear direction that injuries resulting from reckless conduct are not considered willful and malicious injuries, particularly in the absence of any indication respecting whether Debtor pled guilty based upon the intentional, knowing, or reckless standard.

be subjectively aware that his or her actions are substantially certain to cause injury or have been willfully blind to the substantial certainty of harm from his or her actions. *In re Malloy,* 535 B.R. 81, 93 (Bankr. E.D. Pa. 2015); s*ee* S. Rep. No. 989, 95th Cong., 2d. Sess. 77–79 (1978) (defining "willful" as "deliberate or intentional").

A malicious injury consists of a wrongful act done without just cause or excuse, even in the absence of personal hatred, spite, or ill-will. *In re Coley*, 433 B.R. at 498 (citing James William Moore (ed.), 1A Collier on Bankruptcy ¶ 17.17, at 1650.4 (14th ed. 1978)). For a debtor to have acted with malice for purposes of Section 523(a)(6), the debtor's "conduct must [have been]…'more culpable' or involve 'aggravated circumstances' to rise to the level of malice[,]" required for Section 523(a)(6). *In re Jacobs*, 381 B.R. at 139.

### B. The Debtor's Attack on Ms. Lombardi Was Malicious, But Not Willful.

Based upon the evidence of record, the injury Debtor inflicted on Ms. Lombardi is clearly malicious for purposes of Section 523(a)(6).[10] The Debtor viciously beat Ms. Lombardi with his fists and continued beating her even after she lay unconscious and defenseless. No cause or excuse exists under these circumstances that could possibly justify the violence inflicted upon Ms. Lombardi.

---

[10] A civil judgment for injuries sustained from an assault is only dispositive if based upon findings that are consistent with the definitions of willful and malicious found in Section 523(a)(6). *E.g., Smith v. Pitner (In re Pitner)*, 696 F.2d 447, 448-49 (6th Cir. 1982) (jury verdict finding that debtor deliberately shot and killed plaintiff's husband with intent to injure or kill, and not in self-defense, satisfied elements of "willful and malicious" under Section 523(a)(6)); *Milutin v. Cappozzolli (In re Cappozzolli)*, Nos. 03-42286 (MBK), 03-2981 (MBK), 2007 Bankr. LEXIS 1441, at *10-12 (Bankr. D.N.J. Apr. 16, 2007) (plaintiff's default judgment against debtor, based upon the same conduct for which debtor had been convicted of simple assault, was determined to be nondischargeable under 523(a)(6) where the debtor intentionally hit plaintiff with a beer bottle and offered no defense or excuse to the bankruptcy court). Here, the Civil Judgment simply states that "[j]udgment is hereby entered in favor of Plaintiff, Sabrina Lombardi and against Defendant, Michael P Picard, in the amount of $250,000 with respect to Plaintiff's claim for pain and suffering" with no findings attached, and no explanation regarding the legal or factual basis for Debtor's liability. Trial Ex. P-1. The Court cannot possibly find the Civil Judgment has any preclusive effect whatsoever given the absence of any information respecting the basis for the entry of the Civil Judgment.

However, the Court cannot conclude that the injury inflicted upon Ms. Lombardi was willful for purposes of Section 523(a)(6). Dr. Mikuriya testified clearly and consistently based upon her medical background and experience, her observation and treatment of Debtor, information she had gathered about the Attack, and Debtor's history, that Debtor's conduct on that terrible night was the product of acute psychosis and that he was simply not in control of his actions. In fact, it was apparent that his paranoia, obsession with the devil, and aggressiveness extended to basically everyone he encountered the night of the Attack. The Debtor was experiencing a break from reality, which tragically resulted in him severely harming two unsuspecting friends. Under the specific circumstances of this case, and in consideration of all the information of record, the Court holds that the Debtor's actions were not willful because he lacked the requisite intent given his psychotic break from reality, and therefore the Civil Judgment will be deemed dischargeable.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Debtor was not of sound mind at the time of the Attack and therefore lacked the requisite intent required under § 523(a)(6). Accordingly, the Civil Judgment is dischargeable.

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

Date: June 10, 2022